FOR PUBLICATION

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| Kley F. Peralta, Sr. & Carmen Peralta,<br><br>    Debtors. | Case No. 16-21251 (RG)<br><br>Chapter 7 |

Joseph Shapiro, Esq.
Middlebrooks Shapiro, P.C.
841 Mountain Ave, First Floor
Springfield, NJ 07081
*Counsel for Debtor*

Tomas Espinosa, Esq.
8324 Kennedy Blvd.
North Bergen, NJ 07047
*Counsel for Creditors Yanira Colon, Miguel Verdugo & Rosa Lidia Lopez*

**MEMORANDUM DECISION**

This matter comes before the Court[1] on a motion filed by Creditors Yanira Colon, Miguel Verdugo, and Rosa Lidia Lopez ("Movants") seeking an extension of time to file an adversary proceeding (ECF No. 30). Kley F. Peralta, Sr. and Carmen Peralta ("Debtors") filed an Objection

---

[1] At the outset, this Court notes that the judge presiding over this case is Judge Rosemary Gambardella. Although the underlying bankruptcy case remains on Judge Gambardella's docket, this motion has been decided by the undersigned as a result of Judge Gambardella's medical leave. In reaching a determination with respect to this motion, this Court reviewed completely the record in this matter and fully considered the arguments of the parties.

(ECF No. 34) and a Supplemental Certification in Support of the Objection (ECF No. 36), and Movants filed a Reply (ECF No. 38).  At the hearing on May 4, 2018, Judge Gambardella reserved her decision. On August 30, 2018, Judge Gambardella held a telephonic hearing on the motion and, at the Court's request, the parties thereafter submitted supplemental briefing (ECF Nos. 89 & 90).  For the reasons set forth below, the Movants' motion is DENIED.  The following constitutes the Court's findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[2]

I.     **Background**

The factual background and procedural history of this matter are well known to the parties and will not be repeated in detail here.  In relevant part, Movants allege that they were the victims of a fraudulent real estate scheme conceived and carried out by Debtor, Kley F. Peralta.  In September 2015, Movants initiated a civil action against Mr. Peralta in New Jersey state court with attorney Mario Blanch as their counsel.  That matter was pending in the state court when Debtors filed a chapter 7 petition on June 9, 2016.

On June 10, 2016, the Court distributed a Notice of Bankruptcy Filing which set September 6, 2016, as the deadline to object to discharge or to challenge whether certain debts were dischargeable (ECF No. 4).  It is undisputed that each Movant received notice of the bankruptcy filing via first class mail at his or her respective address.[3]  In fact, Movants concede that multiple

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[3] The Court notes that Movant Rosa Lidia Lopez testified at her 2004 Examination that she did not recollect receiving the Court's Bankruptcy Notice.  However, she did verify that the address to which it was sent was, in fact, her proper address.  Moreover, the Bankruptcy Notice—and the Debtors' Petition itself—was attached as an Exhibit to a Certification which Ms. Lopez executed and submitted to the Court in connection to this motion (ECF No. 30-3).  Although at her 2004 Examination Ms. Lopez denied that it is her signature that appears on the Certification, she offers no other explanation for the Certification or for the inclusion of a document she purportedly had never before

documents pertaining to the Debtors' bankruptcy were sent to each movant at his or her respective address.[4] Nevertheless, the September 6, 2016 deadline for filing an adversary proceeding passed and Movants did not file an adversary proceeding challenging dischargeability. Several months later, on April 10, 2017, Movants filed a motion seeking an extension of time to file an adversary proceeding to challenge the dischargeability of the debt owing to them by Debtors.

The crux of the Movants' motion is that the deadline should be tolled for equitable reasons. Specifically, Movants argue that the notice they received—in the form of notices mailed directly to Movants—was designed and calculated to deprive Movants of their due process rights and, as such, did not constitute actual notice as required by the Federal Rules of Bankruptcy Procedure. Movants point to the fact that they are not proficient in English, that they are unsophisticated as to the bankruptcy process, and that the notice of bankruptcy was served upon them directly and not upon the attorney, Mr. Blanch, who represented Movants in the state court action. Finally, Movants note that on September 9, 2016, the Court docketed a Consent Order (ECF No. 13) between Debtors and the chapter 7 trustee ("Trustee") which extended the Trustee's deadline to file a nondischargeability complaint until December 6, 2016. Movants assert that the Trustee and the Debtors were obligated to give notice of the Consent Order and provide a copy to all creditors and their attorneys, but intentionally failed to do so.

---

seen. Moreover, both other Movants concede that the Bankruptcy Notice was sent to their addresses; including Miguel Verdugo, who shares an address with Ms. Lopez. Given the totality of the circumstances, the Court concludes that the Notice of Bankruptcy and other court documents were received by Ms. Lopez at her home address.

[4] *See, e.g.*, Certification of Movants, Exhibit A to Reply Memorandum of Movants, ¶ 9 (ECF No. 38-1) ("We have never denied that we received the documents presented to the court in our application for extension[.]").

3

Debtors contend that the instant motion should be denied. In sum, Debtors assert that they properly listed the Movants in the chapter 7 petition, that Movants were properly served and received actual notice of the bankruptcy in accordance with the rules, and that Debtors were under no obligation or duty to serve Mr. Blanch directly. Debtors also contend that the Consent Order did not apply to Movants and, as such, Movants were not entitled to receive a copy.

**II.    Discussion**

Section 523(c)(1) of Title 11 of the United States Code states that a debtor shall be discharged from a debt unless, after notice and hearing, the Court determines the debt to be nondischargeable. Federal Rule of Bankruptcy Procedure 4007(c) provides that "a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)." That 60-day time period may be extended upon motion of a party in interest and after a hearing; however, the motion must be filed before the time period has expired. FED. R. BANKR. P. 4007(c) ("The motion shall be filed before the time has expired."). Here, the Movants neither filed a complaint before the deadline, nor did they file a motion to extend the deadline within the prescribed time frame. Instead, after the deadline passed the Movants filed the instant motion requesting that the Court extend their deadline to file an adversary proceeding.

Prior to engaging in a legal analysis, the Court takes this opportunity to clarify the appropriate legal basis for the Movants' arguments. Although Movants frame their motion as a request for equitable tolling of a deadline, the substance of their argument is more appropriately characterized as a challenge to the adequacy of the notice they received. These are two distinct

4

and separate concepts. *See, e.g.*, *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 n.6 (3d Cir. 2000) (distinguishing the issues of equitable tolling and adequacy of notice); *In re Trans World Airlines, Inc.*, 96 F.3d 687, 690 (3d Cir. 1996) (same). In the context of late-filed proofs of claims, several courts have expressly noted that the application of equitable tolling due to excusable neglect "presupposes 'that the creditor received timely and adequate notice of the proceedings.'" *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 357 (Bankr. S.D.N.Y. 1993) (quoting *National Union Fire Ins. Co. of Pittsburg v. Main (In re Main)*, 157 B.R. 786, 791 (W.D. Pa. 1992)); *see also, e.g.*, *In re Grand Union Co.*, 204 B.R. 864, 870 (Bankr. D. Del. 1997). Nothing in the Federal Rules of Bankruptcy Procedure or relevant case law suggests that the application of the equitable tolling doctrine would differ in the context of a late-filed adversary proceeding. Accordingly, this Court must first address the due process argument (whether the notice provided was adequate) prior to considering whether application of the equitable tolling doctrine is appropriate. *See In re R.H. Macy & Co., Inc.*, 161 B.R. at 357 ("[T]he analysis begins with whether the Debtors gave adequate notice of the bar date . . . to each of the Movants. If the notice was adequate, the discussion will then turn to whether any Movant has established cause to extend the bar date.").

**A. Adequacy of Notice of Deadline to File Nondischargeability Complaint**

"Inadequate notice is a defect which precludes discharge of a claim in bankruptcy. Due process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response.'" *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.*), 62 F.3d 730, 735 (5th Cir. 1995) (citation omitted)). Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date. *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *see also Chemetron*, 72 F3d. at 346. Federal Rule of Bankruptcy Procedure 2002 addresses notice to creditors and, in relevant part, mandates that "the clerk, or some other person as the court may direct, shall give . . . all creditors . . . **notice by mail** of . . . the time fixed for filing a complaint to determine the dischargeability of a debt." FED. R. BANKR. P. 2002(f)(5) (emphasis added).

As noted above, it is undisputed that Movants received notice of the bankruptcy filing and other documents related to the bankruptcy by first class mail, sent to their respective home addresses.[5] Thus, Movants received adequate notice as required by the Bankruptcy Rules. *Id.*; *see also* FED. R. BANKR. P. 2002(g) (outlining proper procedure for addressing notices); *Chemetron*, 72 F.3d at 346 (explaining that due process is satisfied for notice purposes when known creditors

---

[5] The Court again notes that during her 2004 Examination, Ms. Lopez disputed the fact that she received notice of the bankruptcy. For reasons previously discussed, the Court rejects that contention. Furthermore, "[a] presumption arises that notice was received where the docket and file indicate that the notice was timely and accurately mailed to creditors. A mere allegation that the notice was not received is insufficient to rebut the presumption." *In re Biederman*, 165 B.R. 783, 788 (Bankr. D.N.J. 1994) (citations and quotations omitted).

6

are provided with actual written notice of a debtor's bankruptcy filing and bar claims date). The Movants' arguments to the contrary are unpersuasive and are addressed and denied in turn below.

First, Movants complain that the notice was sent to them in an envelope with Melinda Middlebrooks as the sender. Movants contend that the notice did not identify Ms. Middlebrooks as an attorney or indicate that the document contained therein was a court document and, as such, it was not reasonably calculated to convey the required information. *See, e.g.*, Movants' Reply Memorandum, ECF No. 38-3 at 3. However, Movants attach a copy of the notice they received to their submission. *Id.* at 15-16. The first page of that document is clearly labeled "Official Form 309A . . . Notice of Chapter 7 Bankruptcy Case." *Id.* The document plainly provides information related to the bankruptcy case such as the names of the debtors, the court in which it was filed, and the case number. Further, the document clearly lists Melinda Middlebrooks as the Debtors' attorney. Thus, even accepting the Movants' allegations that the outside of the envelope did not identify the sender as an attorney or the contents as an official court document, a cursory glance of the document itself would have conveyed this information.

Movants next argue that notice was inadequate because they, as lay people who are not proficient in the English language, were unable to understand the legal significance of the document. The Court can appreciate the difficulties that a language barrier creates. However, Movants do not cite to any court rule or controlling case law which mandates that notice be provide in multiple languages. In fact, the document which Movants attach to their Reply Memorandum (ECF No. 38-2), which is a report titled "Language Access in the Federal Courts" written for the National Center for Access to Justice at Cardozo School of Law, recognizes that federal courts are

7

not required to make forms available in languages other than English. Thus, to the extent Movants argue that the notice they received was deficient because it was not provided to them in their native language, this argument is without merit.

Movants also contend that Debtors were aware that they were lay individuals who were unfamiliar with bankruptcy law. Movants assert that Debtors preyed upon Movants' lack of legal sophistication—coupled with their lack of English proficiency—to send a notice that would not adequately inform Movants of their rights and obligations in the Debtors' bankruptcy case. The Court is sympathetic to Movants' position but remains unpersuaded by this argument.

The Third Circuit has observed that a party's "degree of sophistication is an issue that is relevant to the adequacy of the notice of bankruptcy proceedings they received." *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 n.6 (3d Cir. 2000) (citing *In re Grand Union Co.*, 204 B.R. 864, 872, 880 (Bankr. D. Del. 1997)). However, much of the population is untrained in, and unfamiliar with, the law; and this Court is unwilling to find that lack of legal sophistication, alone, is sufficient to defeat proper notice. Moreover, in this case, each of the Movants had been through the bankruptcy process before and should have had at least a basic understanding of the documents they signed in their own bankruptcies. The Movants' prior bankruptcy experience is a relevant consideration and weighs in favor of the adequacy of the notice that Debtors provided.

Further, even assuming Movants lacked the ability to understand the documents that were sent to them, this failure to understand does not defeat the fact that actual notice was provided. Where lay individuals are confronted with a legal issue or receive legal documents beyond their comprehension, they often consult a legal professional. That is exactly what Movants did in the

instant case. Movants certify several times that they sought advice from Mr. Blanch, the attorney who represented them in the state court action. Movants explain that they brought the documents they received to Mr. Blanch's office and delivered them to his secretary. However, Movants state that they never received a response from Mr. Blanch or his office. Movants chose not to follow-up with Mr. Blanch or his office to ensure that he had received the documents or that he understood that Movants were seeking his advice regarding the documents' meaning. Instead, Movants certify that they took his silence as an indication that the documents they received were unimportant. *See, e.g.*, Certification of Movants, Exhibit A to Movants' Reply Memorandum, ¶ 8, ¶11(a), ECF No. 38-1.

Indeed, this Court agrees that taking the bankruptcy notice to a legal professional was the proper course of action. *See id.* at ¶8 ("[W]e did what was proper under the circumstances."). While the Court understands the Movants' frustration with not receiving a response from Mr. Blanch, his silence did not, and does not, render the bankruptcy notice inadequate. The fact remains that the notice Movants received was sufficient to prompt them to seek the advice of a legal professional. Accordingly, the notice was adequate and Movants were not denied due process in these bankruptcy proceedings.[6] *See, e.g.*, *In re Bi-Lo, LLC*, No. 09-02140, 2010 WL 3340521, at *6 (Bankr. D.S.C. Feb. 2, 2010) ("The documents in this case may have contained language that could be deemed legalese as in *Grand Union,* but the Court finds that the forms as a

---

[6] The Movants also complain that they never received a copy of the Debtors' chapter 7 petition. They assert that, if they had received the petition, "it would had [sic] a case number, a description of the court, and some extent why we were included in it, and it would had [sic] prompted us to inquire with our prior attorney Mr. Blanch, the meaning of such document." Certification of Movants at ¶11(a), ECF No. 38-1. This argument fails because, as previously discussed, the notice the Movants received provided the case number, a description of the court, and prompted the Movants to inquire with Mr. Blanch as to the significance of the document.

whole are straightforward and it is not unreasonable to expect a party, sophisticated or not, to contact his or her attorney regarding information received via mail in either form, and the notice given supplied adequate time to do so.").

Movants also argue that notice was inadequate because the Debtors intentionally did not provide notice to Mr. Blanch, the Movants' attorney in the state court action. The parties provided extensive briefing of this issue; namely, whether the failure to provide notice to counsel in a state court action allows creditors who received actual notice of the bankruptcy to file untimely nondischargeability actions. Movants rely heavily on *In re Grand Union Co.*, 204 B.R. 864, 872, 880 (Bankr. D. Del. 1997) in support of their position.[7] In that case, notice of a large chapter 11 bankruptcy was sent directly to personal injury claimants—who were creditors of the bankruptcy estate—and not to the counsel who represented them in the state court personal injury actions. The bankruptcy court considered the claimants' lack of sophistication as well as the fact that the chapter 11 debtor was aware of, and had been in previous communication with, the claimants' state court counsel. Under the circumstances of that case, the court determined that the notice provided to the claimants was not reasonably calculated to apprise them of their rights and obligations in the bankruptcy case and that notice should have been provided to the claimants' state court counsel. In doing so, the *Grand Union* court broadly interpreted the language of Rule 2002(g)—which dictates how notices should be addressed for mailing purposes—and found that the claimants should have been identified and noticed by way of their state court counsel.

---

[7] Movants also cite to a host of case law from other circuits. In reaching its determination, this Court discusses and cites to the case law which it deems pertinent to this issue and, therefore, declines to distinguish and discuss each and every case cited by Movants.

10

This Court is neither bound by, nor persuaded by, the decision in *Grand Union*. As an initial matter, the holding in *Grand Union* unnecessarily complicates the otherwise the plain meaning of FED. R. BANKR. P. 2002(g). The language of this rule "provides that a debtor shall send all notices directly to the creditor unless the creditor's agent directs otherwise in a request filed with the Bankruptcy Court." *In re R.H. Macy & Co., Inc.*, 161 B.R. at 360. As other courts have observed, absent an express request, "[t]here is simply no basis in the Bankruptcy Code or Rules for requiring service on a creditor's attorney." *In re Stauffer*, 378 B.R. 333, 338 (Bankr. D. Utah 2006). "[M]ost courts have not interpreted Fed. R. Bankr. P. 2002(g) to require debtors to serve creditors' counsel, even in instances when debtors knew counsel represented creditors in pre-petition matters regarding the debt in question." *In re Brunswick Baptist Church*, No. 03-13719, 2007 WL 160749, at *3 (N.D.N.Y. Jan. 16, 2007) (collecting cases); *see also In re Bi-Lo, LLC*, No. 09-02140, 2010 WL 3340521, at *5 (Bankr. D.S.C. Feb. 2, 2010).

Further, the case law is unsettled as to whether the broad interpretation of FED. R. BANKR. P. 2002(g) in *Grand Union*—which requires notice upon a creditor's attorney rather than the creditor directly—would actually constitute proper notice. This was the issue in *Linder v. Trump's Castle Assocs.*, 155 B.R. 102 (D.N.J. 1993). In that case, the court wrestled with whether notice served upon counsel in a non-bankruptcy matter could be imputed to the client in the bankruptcy. Ordinarily, notice served upon counsel satisfies any requirement to give notice to the party. However, it is unclear whether that general rule applies to situations where the representation may have ended, or where the nature of the action changed. The *Linder* court observed that that ambiguity arises often in the context of bankruptcy where it is uncertain that an attorney in a state

11

court action will continue to represent the client in the more specialized field of bankruptcy. *See id.* at 105 ("Some courts have held that notice to the attorney binds the client only when given in the context of his or her representation of the client in the bankruptcy case itself.") (citing *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)). Thus, it is unclear whether notice provided directly to Mr. Blanch, the Movants' state court attorney who ultimately did not represent them in the bankruptcy, would have constituted proper notice.

This Court additionally notes that the instant case is factually distinguishable from that of *Grand Union*. In *Grand Union*, an agent of the debtor engaged in pre-petition communications directly with the claimants' counsel in the state court actions. In fact, the agent of the debtor sent a letter directly to state counsel informing that the bankruptcy had been filed. Here, however, counsel for Debtors certify that they had no contact with the Movants' state court attorney "prior to, on, or subsequent to the Debtors' filing of their Chapter 7 petition." Debtors' Supplemental Submission, ECF No. 89; *see also* Supplemental Certification of Joseph M. Shapiro, Esq., ¶4 ECF No. 89-1. Thus, the expectation of continued communication between counsel that was present in the *Grand Union* case is absent in the case presently before the Court.

Given the clear language of FED. R. BANKR. P. 2002(g), and the potential noticing problems that a broad interpretation would create, this this Court joins with the majority of courts in interpreting FED. R. BANKR. P. 2002(g) as not mandating service of notice on creditors' state court counsel. *See, e.g., Saddle River Valley Bank v. Garsia*, No. 09-02255, 2009 WL 3762674, at *3 (Bankr. D.N.J. Oct. 22, 2009) ("In the absence of authority to the contrary, the Court must apply the Bankruptcy Rules as unambiguously written."). Pursuant to FED. R. BANKR. P. 2002(g)'s plain

language, Debtors were required to provide notice to Movants directly, and had no obligation to notice the Movants' state court counsel. As set forth above, Movants did, in fact, receive actual notice of the bankruptcy filing. The notice reported, among other things, the Debtors' names, the case number, the court, the names of the Debtors' attorneys, and the deadline for filing an action challenging dischargeability. The notice provided sufficient information to cause Movants in this case to seek the advice of a legal professional. As a result, this Court concludes that Movants received adequate notice consistent with the Bankruptcy Rules and controlling case law and their due process argument fails.

Finally, the Court will address the Movants' argument that they were denied due process because they were not provided with notice or a copy of the Consent Order between the Trustee and the Debtors. This argument appears to have been abandoned by Movants in their more recent submissions; nevertheless, this argument can—and will—be summarily denied. The language of the Consent Order clearly indicates that the extension of the deadline was extended solely for the benefit of the Trustee. Movants cite to no case law or court rule which requires that they be provided with a copy of an order which has no impact on their rights and obligations. Furthermore, the Movants' suggestion that "[h]ad [a copy of the order] been given, the nature of the notice that had now Melinda Middlebrooks, Esq. listed as the attorney representing the debtors would have triggered the creditors into seeking a bankruptcy attorney to intervene or seek the intervention of Mario Blanch, Esq." is nonsensical and meritless. Movants' Memorandum of Law at 5, ECF No. 30-4. As set forth above, the notice which Movants undeniably received listed Melinda Middlebrooks as the attorney for Debtors and did, in fact, trigger Movants to seek the advice of

Mr. Blanch. Accordingly, the Court rejects the Movants' contention that they were denied due process because they were not provided with notice of the Consent Order.

### B. Equitable Tolling

As set forth above, pursuant to FED. R. BANKR. P. 4007(c), "a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)." That 60-day time period may be extended upon motion of a party in interest and after a hearing; however, the motion must be filed before the time period has expired. FED. R. BANKR. P. 4007(c) ("The motion shall be filed before the time has expired."). Moreover, FED. R. BANKR. P. 9006(b)(3) expressly limits a court's ability to extend the deadline for filing a nondischargeability complaint beyond the limited parameters of FED. R. BANKR. P. 4007(c). The Third Circuit addressed deadline extensions in *Schwartz v. Weinberg (In re Weinberg)*, 197 F. App'x 182 (3d Cir. 2006). Specifically, the *Weinberg* court discussed the U.S. Supreme Court's decision in *Kontrick v. Ryan*, 540 U.S. 443 (U.S. 2004), which dealt with the treatment of an untimely action seeking to deny a discharge and the application of FED. R. BANKR. P. 4004(a). In *Weinberg,* the Third Circuit noted that "because it was undisputed that the creditor in *Kontrick* failed to file in a timely manner and because the creditor raised no argument for tolling based on principles of equity, [the U.S. Supreme Court] did not address '[w]hether the Rules despite their strict limitations, could be softened on equitable grounds.'" *Weinberg*, 197 F. App'x at 188 (quoting *Kontrick*, 540 U.S. at 457). The Third Circuit stated further that it "has never held that those rules [FED. R. BANKR. P. 4004 and 4007] are 'jurisdictional' or otherwise immune from tolling based on equitable principles." *Id*. at 188. Thus, the Third Circuit has left

14

the door open for late filings where the equities warrant tolling of a deadline to file. *See e.g.*, *In re Canonico*, No. 16-34088, 2017 WL 3318840, at *3 (Bankr. D.N.J. June 16, 2017); *DeMaria v. Peters*, No. 14-01002, 2014 WL 2011801, at *2 (Bankr. D.N.J. May 16, 2014).

Whether the doctrine of equitable tolling *could* be applied is a distinct and separate question, however, from whether the doctrine *should* be applied. With regard to circumstances in which tolling of a deadline is appropriate, the Third Circuit has stated:

> Equitable tolling applies when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances. This occurs (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff **in some extraordinary** way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. The plaintiff, however must exercise due diligence in preserving his claim. Equitable tolling is an extraordinary remedy which **should be extended only sparingly**.

*Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (emphasis added) (footnote omitted) (citations omitted) (internal quotations omitted).

Movants cite to this case in their initial moving papers, *see* ECF No. 30-4 at 6, nevertheless, the circumstances of this case do not warrant equitable tolling. Absent from this case are any facts or conditions contemplated by the Third Circuit in *Hedges* which would warrant the use of such an extreme remedy as equitable tolling. For the same reasons discussed above, the Movants' request for equitable tolling will be denied.

Finally, the Court rejects the Movants' public policy argument in favor of equitable tolling. In their Reply brief, Movants assert that Debtors engaged in fraudulent activity in violation of the New Jersey Mortgage Rescue Fraud Prevention Act. Movants further contend that a denial of their

15

extension request would mean that this Court "essentially condoned illegality and the violation of public policy." Movants' Reply Memorandum at 9, ECF No. 38-3.

As an initial matter, this Court makes no findings or determinations with respect to the ongoing state court matter. Nevertheless, even assuming a fraud was perpetrated, a debtor's fraudulent activity does not relieve a creditor of its affirmative duty to take action in a bankruptcy case. *See, e.g., In re Pendergrass*, 376 B.R. 473, 478 (Bankr. E.D. Pa. 2007) ("Section 523(c) evidences Congressional intent that a debtor shall be discharged even from fraudulent debt unless the creditor acts."). Like other courts, this Court recognizes that a deadline can result in seemingly harsh and arbitrary results for those who miss that deadline. "Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." *United States v. Locke*, 471 U.S. 84, 101, 105 S. Ct. 1785, 1796, 85 L. Ed. 2d 64 (1985) (analyzing the filing deadline under Federal Land Policy and Management Act); *see also, e.g., Saddle River Valley Bank v. Garsia*, 2009 WL 3762674, at *3 (finding that that Rule 4007(c) mandates a strict deadline for filing a complaint to determine dischargeability); *Pendergrass*, 376 B.R. at 478 (collecting cases). Accordingly, this Court denies Movants' extension request—not because it condones any actions allegedly taken by Debtors—but because this Court must recognize and enforce the filing deadlines set forth in the Bankruptcy Code. For these reasons, the Court rejects the Movants' public policy argument in favor of equitable tolling.

### III. Conclusion

For the foregoing reasons, the Movants' Motion seeking an extension of time to file an adversary proceeding (ECF No. 30) is DENIED. The Court will enter a form of Order consistent with this opinion.

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: April 16, 2019